UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| KENDALL GARLAND, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :   No. 2:16-cv-00527 |
| | : |
| JOSEPH J. PETERS INSTITUTE (JJPI); | : |
| CHAD MARGULIES; | : |
| AGENT DAGE GARDNER, | : |
| | : |
| Defendants. | : |

_____

# **O P I N I O N**

**Defendants JJPI and Margulies's Motion to Dismiss, ECF No. 23 – Granted**
**Defendant Gardner's Motion to Dismiss, ECF No. 24 – Granted**

**Joseph F. Leeson, Jr.**                                                                                         **March 31, 2017**
**United States District Judge**

      Defendants Joseph J. Peters Institute ("JJPI"), Chad Margulies, and Agent Dade Gardner move to dismiss Plaintiff Kendall Garland's Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Because Garland's claims are barred by *Heck v. Humphrey* and because his Complaint fails to plausibly allege a violation of his Fifth Amendment rights, Defendants' motions are granted, and Garland's Complaint is dismissed.

1

**I.      Background**

Garland alleges the following facts.

Garland was directed as part of a previous sentence of probation to attend sexual abuse counseling at JJPI.[1] Complaint ¶ 3, ECF No. 3. Margulies was Garland's treatment facilitation or therapist at JJPI. *Id.* ¶ 5. In early 2014, Margulies informed Garland that Garland's probation officers and JJPI wanted him to take a polygraph examination as part of his treatment. *Id.* ¶¶ 21, 28. Garland initially refused to sign papers agreeing to take the examination. *Id.* ¶ 29. After Garland's probation officers learned of his refusal, the officers threatened Garland with revocation of probation if he did not take the examination "and answer every question posed." *Id.* ¶¶ 32-34.[2] Further, Margulies told Garland that the polygraph was "mandatory." *Id.* ¶ 35. Probation officers told Garland that the polygraph exam would be a "maintenance polygraph that would not ask about the underlying offense." *Id.* ¶ 36.

Garland ultimately agreed to take the polygraph examination. During the exam he was asked "incriminating questions about sexual contact with minors and sexual contact with prostitutes," as well as "other incriminating questions." *Id.* ¶¶ 52-53. Garland alleges that "[t]he implications of the responses required by the polygraph examination invite[ d] exposure to danger of prosecution for various charges." *Id.* ¶ 55. Further,

> The potentially incriminating testimony or compelled answers suggest exposure to prosecution, additional evidence or investigations which are completely separate from the basis of the plaintiff's probation revocation and resentence, and

---

[1]     Garland's probation stemmed from his 2002 *nolo contendere* plea in Pennsylvania to aggravated indecent assault and corrupting the morals of a minor. *See Garland v. Pennsylvania*, No. CV 14-5329, 2016 WL 1266743, at *1 (E.D. Pa. Feb. 16, 2016), *report and recommendation adopted*, No. CV 14-5329, 2016 WL 1255753 (E.D. Pa. Mar. 30, 2016) (summarizing Garland's history).

[2]     In addition, Garland alleges that after the probation officers learned of Garland's refusal to take the exam, they increased the frequency of Garland's requirement to meet with his probation officers, from a monthly basis to a weekly basis. *Id.* ¶ 39.

also separate from normal probation conditions (and also for which the plaintiff
would be completely innocent of).

*Id.* ¶ 61

It was determined that Garland failed the exam, and he was discharged from treatment at JJPI.

Following Garland's discharge from JJPI, a hearing was held on May 30, 2014, in the Philadelphia County Court of Common Pleas before the Honorable Ann M. Butchart, to determine whether Garland had violated his probation. At the hearing, Agent Gardner, a probation officer, testified that Garland was "unsuccessfully discharged from the sex offenders treatment after he failed a polygraph regarding sexual contact with minors and sexual contact with prostitutes." Tr. 4:7-11, ECF No. 3.[3] According to Agent Gardner, Garland's polygraph failure and resulting discharge from JJPI constituted a violation of his probation. Tr. 4:11-12. Agent Gardner explained that Garland was polygraphed because he "wasn't cooperating or admitting [to his past offenses] in his group[]" sessions. Tr. 9:23-25. Agent Gardner also noted that Garland initially said he did not want to do the polygraph and wouldn't sign the paperwork, but "then we spoke to him and then he went back on and signed the paperwork for the polygraph . . . and then came back and failed." Tr. 10:4-9.[4]

In response to Judge Butchart's questions about the reasons for the polygraph, Agent Gardner replied that "[t]he polygraph was administered . . . as a maintenance [polygraph] due to his not admitting to the offense and being in a distance between the offense," and because "we were seeing some things in his behavior too." Tr. 11:20-12:6. Judge Butchart then summarized

---

[3]     Garland attached a copy of the hearing transcript to his Complaint.
[4]     At the hearing, Garland testified that he had never denied his offense and did not refuse to take the polygraph; rather, he "just wanted to speak with [his probation officers] to clarify" the reasons for the exam. Tr. 16:1-22.

that, as she understood it, there were two reasons that the polygraph was administered: first, because of Garland's denial of his past offense and, second, "because of inconsistencies between what he was saying and what . . . he [was] believed to be doing." Tr. 12:7-16. Agent Gardner replied that this was correct. Tr. 12:17. Judge Butchart further observed that if Garland had "passed the polygraph, it would have indicated, as far as the denial went," that he could have been successfully discharged from treatment "[b]ecause it would have been determined that this [treatment], in fact, was no longer needed." Tr. 12:24-13:13.

Judge Butchart asked if "the fact that [Garland] failed the polygraph would be interpreted to underscore the need to continue treatment . . . as well as affirming the discrepant behaviors," to which the Commonwealth's attorney replied "yes." Tr. 13:15-20. After reviewing Garland's history of treatment at JJPI, beginning in 2007, and observing that Garland had "not been able to complete this program despite three attempts," which "causes concern," Tr. 28:11-19, Judge Butchart revoked Garland's probation, stating that she had "great concerns concerning particularly the nature of the offense and . . . why [Garland] has been unable to successfully complete treatment." Tr. 31:3-11.

In the Complaint, Garland alleges that he was "coerced and compelled to take the [polygraph] exam and to answer every question posed within" and that "the answers compelled as a result of the polygraph were used, sought to be used or attempted to be used at the plaintiff's probation hearing and sentence in an effort to assist in the finding or justification of imposing a harsher sentence." Compl. ¶¶ 59, 67. He alleges that this conduct violated his Fifth Amendment rights. Garland seeks the following relief: (1) a declarative judgment stating that Defendants violated his Fifth Amendment rights and substantive due process rights and that he was retaliated

against for exercising his Fifth Amendment rights; and (2) compensatory and punitive damages for the alleged violations.

## II. Standard of Review – Motion to Dismiss

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting P*inker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations ... raise a right to relief above the speculative level' " has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Twombly*, 550 U.S. at 555). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III. Analysis

**A**. **Garland's claims are barred by *Heck v. Humphrey*.**

In *Heck v. Humphrey*, 512 U.S. 477 (1994). the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [invalidated]." *Id.* at 486–87 (footnote omitted). Thus, "the district court must consider whether a judgment in favor of the

plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. *Heck* has been extended to cases challenging parole and probation revocations. *See, e.g., Johnson v. Mondrosch*, 586 F. App'x 871, 873 (3d Cir. 2014).[5]

Defendants contend Garland's claims, were they to succeed, would necessarily imply the invalidity of the decision to revoke his probation. Accordingly, because Garland has not alleged that his probation revocation was overturned or declared invalid, Defendants contend that Garland's claims are barred by *Heck*.

Garland responds his claims are not *Heck*-barred because "even if the success of the claim could possibly put [him] in a better position to attack the sentence and/or revocation," this success "still would not 'necessarily' invalidate the revocation or sentence," because there was other "separate and independent evidence" to support the revocation and sentence. Pl.'s Resp. 9-10, ECF No. 28. Similarly, in his Complaint, Garland alleges that the compelled statements "do not form the basis of revocation or sentence," that "the court did not state or appear to base the sentence upon the compelled answers to incriminating questions," and that "the finding of revocation and sentence are not inextricably linked to the compelled answers or the polygraph." Compl. ¶¶ 67-69.

The Court agrees with Defendants that a judgment in favor of Garland in this case would necessarily imply the invalidity of his probation revocation. As the transcript of Garland's revocation hearing makes clear, his probation was revoked because he was discharged from JJPI as a result of failing the polygraph examination. The *gravamen* of Garland's claims in this case is that Defendants' administration of the polygraph examination and the introduction of the

---

[5] As the court in *Johnson* observed, the fact that a probationer has been re-released on parole does not preclude the application of *Heck*. *See id.*

examination results at the revocation hearing violated his Fifth Amendment rights. Because success in these claims would necessary imply the invalidity of the revocation, Garland's claims are barred by *Heck*.

**B.     Garland fails to state a claim for violation of his Fifth Amendment rights.**

Even if Garland's Complaint were not barred by *Heck*, the Complaint would fail on the merits because it fails to state a Fifth Amendment claim. The Fifth Amendment, as incorporated and made applicable to the states through the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "It has long been held that this prohibition not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also 'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)). In all such proceedings,

> a witness protected by the privilege may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant. . . . Absent such protection, if he is nevertheless compelled to answer, his answers are inadmissible against him in a later criminal prosecution.

*Id.* (quoting *Lefkowitz*, 414 U.S. at 78, 94). Accordingly, if a witness's compelled answers are used against him in a criminal prosecution, his Fifth Amendment rights have been violated. *See Folk v. Atty. Gen. of Commonwealth of Pa.*, 425 F. Supp. 2d 663, 667 (W.D. Pa. 2006) ("The Fifth Amendment right is not violated until compelled statements are used against a person in a criminal case."); *see also Roman v. DiGuglielmo*, 675 F.3d 204, 210 (3d Cir. 2012) ("An individual trying to make out a Fifth Amendment claim must demonstrate two key elements:

7

compulsion and use."); *Renda v. King*, 347 F.3d 550, 559 (3d Cir. 2003) ("[I]t is the use of coerced statements during a criminal trial . . . that violates the Constitution.").

In *Murphy*, the Supreme Court held that a probationer's "general obligation to appear and answer questions truthfully [does] not in itself convert [his] otherwise voluntary statements into compelled ones." 465 U.S. at 427. Accordingly, "[a] state may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing privilege." *Id.* at 435. But the Court held that "[t]he result may be different if the questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution." *Id.* In these circumstances, "if the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." *Id.* In short, a state may not require a probationer "to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent." *Id.* at 436; *see also United States v. Lee*, 315 F.3d 206, 213 (3d Cir. 2003) ("A probationer may not refuse to answer a question just because his answer would disclose a violation of probation; rather, a probationer may only invoke his privilege against self-incrimination if a truthful answer would expose him to a prosecution for a crime different from the one on which he was already convicted.").[6]

---

[6] Under *Murphy*, "the threatened penalty must be specifically addressed to the exercise of the privilege for the defendant to claim ex post that he had been compelled to speak; it [is] not enough that the defendant may have reasonably believed his probation would be revoked for failing to answer his probation officer's questions." *United States v. Frierson*, 945 F.2d 650, 661 (3d Cir. 1991). In other words, "[f]or statements to be considered compelled, the Court [in *Murphy*] required that the threat of punishment be conditioned on the assertion of the privilege; a

Here, Garland has not plausibly alleged that the state compelled him to incriminate himself. As set forth above, Garland alleges that after he refused to sign paperwork agreeing to take the examination, the probation officers threatened Garland with revocation of his probation if he did not take the examination "and answer every question posed." But Garland's refusal to sign the paperwork was not a legitimate exercise of the Fifth Amendment privilege, as at that time no question had been put to him for which "a truthful answer would expose him to a prosecution for a crime different from the one on which he was already convicted." *See Lee*, 315 F.3d at 213; *see also Aruanno v. Spagnuolo*, 292 F. App'x 184, 186 (3d Cir. 2008) ("[T]he Fifth Amendment protects against 'real dangers, not remote and speculative possibilities.'" (quoting *Zicarelli v. N.J. State Comm'n of Investigation*, 406 U.S. 472, 478 (1972)). Nor does the "general requirement of truthfulness or disclosure" that the officers allegedly imposed on Garland suffice to render his statements compelled. In short, Garland has not alleged that he was forced "to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent." *See Murphy*, 465 U.S. at 436.

In any event, even if Garland's statements were compelled, they have not been used against him in a criminal case. A probation revocation hearing is not a "criminal proceeding" for the purposes of the Fifth Amendment. *Murphy*, 465 U.S. at 435 n.7 (1984) ("Although a revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding."); *Gagnon v. Scarpelli*, 411 U.S. 778, 782, (1973) ("Probation revocation, like parole revocation, is not a stage of a criminal prosecution."); *see also Folk v. Atty. Gen. of Commonwealth of Pa.*, 425 F. Supp. 2d 663, 667–68 (W.D. Pa. 2006) ("There can be no dispute that Department of Corrections rehabilitation programs and Parole Board proceedings do not

---

general requirement of truthfulness or disclosure could not be used after the fact to claim that incriminating statements had been compelled." *Id.*

constitute a 'criminal case' within the meaning of the Fifth Amendment."). Thus, "[j]ust as there is no right to a jury trial before probation may be revoked, neither is the privilege against compelled self-incrimination available to a probationer." *Murphy*, 465 U.S. at 435 n.7; *see also id.* at 440 (observing that "probation revocation proceedings are not criminal in nature" and that "the Fifth-Amendment ban on compelled self-incrimination applies only to criminal proceedings") (Marshall, J., dissenting). Accordingly, even if compelled statements had been introduced during the revocation hearing, this would not have violated Garland's Fifth Amendment rights.

**C.      Garland fails to state a claim for violation of his substantive due process rights.**

Garland's Complaint, in its prayer for relief, asserts that Defendants violated his substantive due process rights, but he has not elaborated on this assertion in his filings in response to Defendants' motions to dismiss this claim. This claim is barred by the "more-specific-provision rule" established by the Supreme Court. *See County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998). "Under this rule, 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997)). As discussed above, Garland's claims are covered by the Fifth Amendment and have been analyzed under the standards appropriate to that specific provision.

**IV.     Conclusion**

For the reasons stated above, Garland's Complaint is barred by *Heck*, fails to state a claim, and is dismissed. Because Garland's Complaint is barred by *Heck*, the dismissal is without prejudice to refiling in the event that his probation revocation is invalidated. *See Brown v. City of Philadelphia*, 339 F. App'x 143, 145–46 (3d Cir. 2009) (holding that "[w]hen a § 1983 claim is dismissed under *Heck*, the dismissal should be without prejudice") (quoting *Fottler v. United States*, 73 F.3d 1064, 1065–66 (10th Cir. 1996)). A separate order follows.

                                                                BY THE COURT:


                                                                */s/ Joseph F. Leeson, Jr.*_____
                                                                JOSEPH F. LEESON, JR.
                                                                United States District Judge